IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRUDENCE PELINO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-33 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| HOPEWELL AREA SCHOOL DISTRICT, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants' Motion to Dismiss (Doc. 18) will be granted. The dismissal will be with prejudice regarding Plaintiff's employment discrimination claims for constructive discharge, and her state law claims for intentional infliction of emotional distress ("IIED"). The dismissal will be without prejudice to amendment regarding her putative, but presently deficient, hostile work environment claim(s). And a deadline will be set for Plaintiff to amend the pleadings, if she wishes, to proceed on that theory alone.

Plaintiff is the spouse and representative of the estate of Venanzio Pelino. Until Mr. Pelino's unfortunate passing in April 2022, he worked for the Defendant school district as its director of buildings and grounds. Given that Ms. Pelino stands in the place of the decedent, she and Mr. Pelino, at times, will be referred to collectively as Plaintiff.

In essence, Plaintiff alleges that the school district's former superintendent, Michelle Miller, engaged in what fairly may be characterized as a vendetta against Mr. Pelino,

until her resignation in December (or August) 2021.[1]  Plaintiff claims that Defendant Miller had discriminatory animus based on sex; because she regarded him as having a disability (Crohn's disease); and in retaliation for Mr. Pelino having complained to the school board. Ms. Pelino alleges that Defendants' mistreatment of the decedent exacerbated his medical condition, proximately causing his death.  In light of this allegation, the emotional aspects of this litigation appear to be high.

Defendants are correct that Plaintiff cannot proceed under a constructive discharge theory.  To state such a claim, "[a] plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign.  *But he must also show that he actually resigned*."  Green v. Brennan, 578 U.S. 547, 555 (2016) (citation omitted, emphasis added).

Here, Plaintiff's employment with the school district continued until his passing in April 2022.  This was months after Defendant Miller's departure, in December (or August) 2021. There is no assertion or inference that Plaintiff's difficulties continued, or were expected to continue, after Defendant Miller left.  *Cf.* Am. Compl. at ¶ 10 (for a thirteen-year period under a prior superintendent's tenure, Plaintiff had an "exceptional" run of employment, receiving high performance ratings); *and id.* at ¶ 24 ("Shortly before [the] new [school] board took office, Defendant Miller resigned[,] . . . because she believed that she would face strong criticism, and probable discipline, including possible termination from employment, when the new board took office.").  Even had the pleadings asserted otherwise, the claim cannot be salvaged. There was no severance of the employment relationship and, thus, no constructive discharge.

---

[1] The Amended Complaint alleges that Defendant Miller left in December 2021.  Am. Compl. (Doc. 10) at ¶ 12.  Defense counsel indicates that she resigned effective August 13, 2021. Doc. 19 at n.4.  The distinction is immaterial for the purposes of the analyses herein.

This leaves Plaintiff's allegation of a hostile work environment.  The theory is referenced in the EEO charge, *see* Doc. 19 at ECF banner-pgs. 23-24 of 26, and Defendants' exhaustion of remedies argument (albeit, made in a different context) is unavailing.[2]  As Plaintiff highlights, the Court of Appeals for the Third Circuit has indicated that a hostile work environment, alone, may qualify as an adverse employment action.  *See* Greer v. Mondelez, Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014) ("a plaintiff may prove an adverse employment action by proving that he or she was subjected to a hostile work environment") (citations omitted); *see also* O'Brien v. Middle East Forum, 57 F.4th 110, 113 (3d Cir. 2023) (addressing a claim of hostile work environment, and recognizing that recovery is possible "where no [other] tangible adverse employment action was taken").

Plaintiff's current allegations regarding hostile work environment are sparse.  The pleadings mentioned the theory only once, in passing.  *See* Am. Compl. at ¶ 12.  There are insufficient details for the Court to conclude that the severity or pervasiveness standards have been met.  Accordingly, Defendants' Motion to Dismiss will be granted, and the Court will afford Plaintiff one last opportunity for amendment.[3]

---

[2]  The EEO charge specifically tied the alleged hostile work environment to Plaintiff's disability discrimination claim.  *See id.*  The charge on the whole, however, presented Defendant Miller's unfavorable treatment "as a piece"; and enough information was supplied to conclude that the investigation reasonably may have extended to the other protected classes.  *See id.* at pg. 23 of 26 (claiming discrimination based on "Disability, Sex/Gender[ and] Harassment based on . . . Disability[,] Gender[ and] Retaliation").

[3]  Regardless of whether the deficiencies prove curable, the Court believes that discussions are warranted regarding what reasonably may (and may not) be expected from this litigation.  Mr. Pelino was not constructively discharged, as a matter of law, and wage loss claims – past and future – are unavailable.  And while Ms. Pelino's situation undoubtedly warrants sympathy – and she is entitled to experience without judgment her feelings and beliefs – the Court finds troubling the inclusion of an express averment that Defendants' conduct (within the context of an employment-relationship) caused Mr. Pelino's death.  *See id.* at ¶¶ 25, 28.  Perhaps such feelings and beliefs, once perceived, had to be spoken.  They likely are difficult for Defendants to hear.

Finally, Defendants' Motion to Dismiss will be granted regarding Plaintiff's claims for IIED.  Defendants have identified supportive legal authority, and Plaintiff has offered nothing in rebuttal.  Assuming opposition has not been waived – *and* assuming that Defendants' immunity arguments are nondeterminative – the Court agrees that the alleged acts and omissions do not rise to the level of outrageousness or extremity required under the law.

Consistent with the foregoing, Defendants' Motion to Dismiss (**Doc. 18**) is **GRANTED.**  The dismissal is with prejudice as to all claims, except those regarding a hostile work environment.  Should Plaintiff elect to amend her pleadings, restricted to that theory, her deadline for filing a second amended complaint is **January 10, 2024** (due to the holidays, additional time has been afforded).  Given that Plaintiff already once has amended her pleadings, and in light of the specificity of the permissible amendments, she must make last, best efforts to state a viable claim, because further opportunity will not be provided.  If amended pleadings are not timely filed, the dismissal will be converted to with-prejudice.

IT IS SO ORDERED.

December 21, 2023                                        s/Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

But the biggest concern, from the Court's perspective, is the effect this may have on Plaintiff's expectations.  It suffices to say:  the Court is unaware of any case, in any jurisdiction, where a wrong-death recovery has been permitted under the laws against employment discrimination.  It also would be unfortunate for this litigation to be viewed as a proxy for whether the Pelinos' feelings and beliefs are vindicated (or rejected).  As revealed by the other analyses herein, Plaintiff's ability to pursue a given theory or measure of relief depends on legal standards largely untethered to personal beliefs or emotion.  Should Plaintiff choose to proceed, the Court hopes that counsel will advise her on these points, so that she does so with eyes open.